[Cite as *State v. Eggers*, 2013-Ohio-3174.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2011-CA-48 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-40 |
| v. | : | |
| | : | |
| ADAM EGGERS | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of July, 2013.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4ᵗʰ Floor, Post Office Box 1608, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

CHRISTOPHER W. THOMPSON, Atty. Reg. #0055379, 130 West Second Street, Suite 1444, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Adam Eggers appeals from his conviction and sentence for

Felony Murder, following a plea bargain.  Eggers contends that his guilty plea and waiver of

rights were not knowingly, intelligently, and voluntarily made, due to the trial court's failure to comply with Crim.R. 11 during the plea colloquy and the trial court's mistake in sentencing Eggers to a term of postrelease control. We conclude that the trial court complied with Crim.R. 11 by informing Eggers of his rights and determining that Eggers understood that a guilty plea waived those rights. We further conclude that the trial court erred in sentencing Eggers to postrelease control, but that Eggers has failed to demonstrate that he was prejudiced by the trial court's error. Accordingly, the portion of the trial court's judgment imposing a five-year term of postrelease control is Vacated, and the judgment is Affirmed in all other respects.

## I. Course of the Proceedings

{¶ 2} In May 2010, Adam Eggers fired four shots into a residence located at 926 Southfield Avenue in Springfield, Ohio, with the intention of killing Dustin Bryant. One of the shots went through a wall and struck Julie Snyder, killing her instantly. Eggers was indicted on one count of Aggravated Murder, R.C. 2903.01(A), with a firearm specification, two counts of Felony Murder, R.C. 2903.02(B), each with a firearm specification, one count of Felonious Assault, R.C. 2903.11(A)(2), with a firearm specification, one count of Improperly Discharging a Firearm at or into a Habitation, R.C. 2923.161(A)(1), and one count of Improper Handling of Firearms in a Motor Vehicle, R.C. 2923.16(B). Dkt. 1.

{¶ 3} Pursuant to a plea agreement, Eggers pled guilty to Felony Murder, as charged in count three of the indictment, causing the death of another as a proximate result of improperly discharging a firearm at or into a habitation, in violation of R.C. 2903.02(B) and 2923.161(A)(1). In exchange for Eggers's guilty plea, the State dismissed the firearm specification attached to

count three and the remaining charges and specifications. The parties agreed that Eggers's sentence would be fifteen years to life.

{¶ 4} Immediately after accepting his guilty plea, the trial court sentenced Eggers to life imprisonment with parole eligibility after fifteen years. The trial court also sentenced Eggers to a mandatory five-year term of post-release control. Dkt. 23.

{¶ 5} Eggers appeals from his conviction and sentence.[1] Eggers's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 19 L.Ed.2d 493 (1967), stating that he could find no meritorious issues for appellate review, but suggesting two potential issues for review. We notified Eggers of his appellate counsel's representations and afforded him time to file a pro se brief. Eggers filed a pro se brief raising three issues for review, which involved the same matters his appellate counsel had assigned as potential error. Based on our review of the issues raised by appellate counsel and Eggers, we determined that there was a non-frivolous issue with respect to whether Eggers's plea was knowingly, voluntarily, and intelligently made. Therefore, we appointed new appellate counsel to argue the error assigned, as well as any other error counsel should deem meritorious. *State v. Eggers*, 2d Dist. Clark No. 11CA48, 2012-Ohio-2967. Eggers's new appellate counsel subsequently filed a brief raising two assignments of error, which we address herein.

---

[1] Eggers moved under Crim.R. 32.1 to withdraw his guilty plea, claiming that he was coerced into pleading guilty by his counsel and that he was innocent of the charge of Murder. Dkt. 26. The trial court overruled his motion without a hearing. Eggers subsequently filed a petition for post-conviction relief, which the trial court also overruled without a hearing. Neither of these decisions is within the scope of this appeal.

## II. The Trial Court Adequately Explained Eggers's Rights and Determined that Eggers's Plea Was Knowing, Intelligent, and Voluntary

{¶ 6} Eggers's First Assignment of Error states:

APPELLANT'S GUILTY PLEA AND WAIVER OF RIGHTS WERE NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE.

{¶ 7} At the plea hearing, counsel for the State explained the terms of the plea agreement. Tr. 3. The State then placed the pertinent facts on the record relating to the night that Julie Snyder was killed. *Id.* at 4–5. Eggers acknowledged that he understood the terms of the plea agreement, and said that he was not under the influence of drugs, alcohol, or medication. Eggers informed the trial court that he had signed the plea agreement after reviewing it with his attorney, and that he understood the agreement. Eggers stated that no one had threatened him to convince him to plead, and that he was pleading guilty voluntarily. The court then explained to Eggers the punishment for the offense of Felony Murder, and that Eggers was subject to a mandatory five years of post-release control. *Id.* at 5-8.

{¶ 8} The trial court then engaged in the following colloquy with Eggers:

THE COURT: And do you understand that you do have the right to a trial in this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: At that trial you would have the right to require the State to prove beyond a reasonable doubt each and every element of the offense to which you are pleading guilty, and you could only be convicted upon the unanimous verdict of a jury. You would have the right to confront witnesses who would testify against you, and your attorney could cross-examine those witnesses. You

would have the right to use the Court's subpoena power to compel the attendance of witnesses on your behalf, and you would also have the right to testify, but you could not be forced to do so. *Do you understand all of these rights?*

THE DEFENDANT: *Yes, Your Honor.*

THE COURT: *By pleading guilty you would be giving up or waiving all of these rights that we have gone over. Understanding that at this time how did you wish to plead to the offense of murder in Count Three of the indictment?*

THE DEFENDANT: *I'm sorry. Can you say that again?*

THE COURT: *Sure. I just want to make sure that you do understand that upon entering a guilty plea in this case you would be waiving or giving up all of those rights that we have gone over*, the trial rights that you would have. The right to a trial, the right to the State proving their case beyond a reasonable doubt, the right whereby you could only be convicted upon the unanimous verdict of a jury, the right to confront witnesses who would testify against you, the right to have your attorney cross-examine those witnesses, the right to use the Court's subpoena power to compel the attendance of witnesses who would testify against you and also the right to testify if you choose to do so but you could not be forced to

*do so.  By pleading guilty you would be giving up*

*or waiving those rights.  Understanding that, how*

*did you wish to plead to the offense of felony murder*

*in Count Three of the indictment?*

THE   DEFENDANT: *Guilty, Your Honor.*

THE   COURT: The Court finds that the defendant has knowingly, voluntarily, and intelligently waived his rights and entered a plea of guilty to that offense, and based upon that plea I find him guilty of that offense.  *Id.* at 8-10 (Emphasis added.)

**{¶ 9}**    Eggers contends that the trial court's explanation of his rights, and the fact that by pleading guilty he would waive these rights, was confusing, thereby rendering his guilty plea less than knowing, voluntary, and intelligent.   According to Eggers, the trial court erred when it explained all of the rights at once, rather than one at a time, and when it failed to ask Eggers if he understood that a guilty plea would waive his rights.   Based on our review of the particular facts of this case, we do not agree.

**{¶ 10}**   Crim.R. 11(C)(2)(c) provides that the court may not accept a plea of guilty or no contest:

without first addressing the defendant personally and . . .[i]nforming the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at trial at which the defendant cannot

be compelled to testify against himself or herself.

{¶ 11}   A guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner that his plea waives those rights. *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E. 2d 115 (1981).

{¶ 12}   In *Ballard*, the Ohio Supreme Court described how a trial court must explain a defendant's rights under Crim. R. 11, stating, at paragraphs one and two of the syllabus:

> 1. Prior to accepting a guilty plea from a criminal defendant, the trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses.  (*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, followed.)

> 2. Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant. (*State v. Caudill*, 48 Ohio St.2d 342, 358 N.E.2d 601, modified.)

{¶ 13}   In *State v. Thomas*, 116 Ohio App.3d 530, 534, 688 N.E.2d 602 (2d Dist.1996), we expounded on the Supreme Court's statement regarding Crim. R. 11 and the exchange that the trial court is required to have with a defendant   prior to accepting his guilty plea:

> The purpose of the procedure required by [Crim.] R. 11(C) is to ensure that the defendant subjectively understands each of the rights concerned and that he

waives it by his plea of guilty or no contest. That proposition must be demonstrated by the record. The preferred method is to use the language contained in the rule, stopping after each right and asking whether the defendant understands that right and knows that his plea waives it. *Id.* When that is not done, the record must, in some other way, affirmatively demonstrate the propositions made necessary by the rule.

{¶ 14} In short, "a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 27.

{¶ 15} The trial court explained each of Eggers's rights to him. After doing so, Eggers stated that he understood these rights. Tr. 8-9. The trial court then explained that by pleading guilty, Eggers would be waiving those rights, once again stating each of Eggers's rights. The court then stated, "By pleading guilty you would be giving up or waiving all of these rights that we have gone over. Understanding that at this time how did you wish to plead to the offense of murder in Count Three of the indictment?" Eggers then stated "I'm sorry. Can you say that again?" The trial court then once again explained all of Eggers's rights and that a guilty plea would mean that Eggers is waiving all of these rights. The court concluded by once again asking, "Understanding that, how did you wish to plead to the offense of felony murder in Count Three of the indictment?" This time, Eggers responded that he was pleading guilty.

{¶ 16} Eggers contends that the trial court erred by failing to ask Eggers if he understood that a guilty plea would waive his rights. The trial court did ask this question, albeit in an

imperfect way. The trial court asked, "Understanding that, how did you wish to plead to the offense of felony murder in Count Three of the indictment?" This question essentially asked, "Assuming you understand that a guilty plea waives these rights, how do you wish to plead?" By answering "guilty," Eggers implied that he understood that a guilty plea would waive his rights and that he was pleading guilty. While we agree that the better practice would have been to stop after the explanation of each right and ask whether Eggers understood the right and that a guilty plea waived the right, we conclude the trial court's three explanations of Eggers's rights, Eggers's confirmation that he understood the rights, and the trial court's two explanations to Eggers that a guilty plea would waive the rights, were sufficient to establish that Eggers's guilty plea was knowing, intelligent, and voluntary. Eggers also stated that he understood what was contained on the written plea form that he signed voluntarily. His rights and the consequences of a guilty plea were explained on this form. Based upon the entire plea colloquy, we conclude that the trial court could reasonably determine, as required by Crim.R. 11(C)(2)(c), that Eggers understood both his rights and the consequences of his guilty plea.

{¶ 17} Eggers also contends that the trial court failed to comply with Crim.R. 11 when the court addressed the fact that Eggers "cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c). The trial court did not use the language of Crim.R. 11(C), instead stating, "You would have the right to use the Court's subpoena power to compel the attendance of witnesses on your behalf, and you would also have the right to testify, but you could not be forced to do so." Tr. 8-9. The Supreme Court has expressed a preference that the trial court use the language employed in Crim.R. 11 when explaining a defendant's rights to him during a plea colloquy. But the Supreme Court has also made it clear that the failure to employ

the language in Crim.R. 11 is not fatal to a guilty plea. Indeed, the Supreme Court has noted that "[t]he use of common, everyday words, * * * instead of a rote recitation of legal terminology, can assist the defendant in understanding the rights forfeited by entry of a plea." *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 20.

{¶ 18} The trial court explained Eggers's right to not be compelled to testify against himself in common, everyday words. Based on our review of the particular facts before us, we conclude that the trial court did not err in doing so.

{¶ 19} Eggers finally argues that the trial court erred by not inquiring whether Eggers's plea of guilty was one that should have been done pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Brief, p. 9-10. Eggers's reliance on *Alford* is misplaced.

{¶ 20} In *Alford,* the United States Supreme Court found that a guilty plea coupled with a claim of innocence should not be accepted unless there is a factual basis for the plea and the trial court inquires into and resolves the apparent conflict between the waiver of trial and claim of innocence. *Id.* at 37. However, _'[i]mplicit in any *Alford* plea is the requirement [that] a defendant actually state his innocence on the record when entering a guilty plea.'" *State v. Knowles*, 8th Dist. Cuyahoga No. 95239, 2011-Ohio-1685, ¶ 20 (Citations omitted.) The record before us discloses no protestations of innocence when the trial court accepted Eggers's guilty plea.

{¶ 21} The only statements in the record that could be construed as a protestation of innocence occurred after the guilty plea had been accepted. The trial court then proceeded to sentencing and asked Eggers if he had anything else to say, thus giving Eggers the chance to

exercise his right to allocution. Tr. 10-11. At that time, Eggers stated, for the first time, "I'd like to apologize to the family. You know I loved her. You know I didn't do this. I didn't do this. I love you, mom. I don't know. That's it. I don't know what else to say." *Id.* at 11.

{¶ 22} Eggers waited until sentencing to make any statement regarding innocence. Therefore, *Alford* does not apply, and the trial court had no duty during the plea hearing to inquire whether Eggers's plea of guilty was one that should have been done pursuant to *Alford*.

{¶ 23} Eggers's First Assignment of Error is overruled.


**III. Eggers Has Failed to Demonstrate that He Was Prejudiced**

**by the Trial Court's Incorrect Inclusion of Postrelease Control**

{¶ 24} Eggers's Second Assignment of Error states:

THE TRIAL COURT ERRED, AS A RESULT OF A MUTUAL MISTAKE OF THE PARTIES AND THE COURT, BY INFORMING APPELLANT OF AND SENTENCING APPELLANT TO A TERM OF POST RELEASE CONTROL AS PART OF HIS NEGOTIATED PLEA TO THE CHARGE OF MURDER AND THEREFORE WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY MADE.

{¶ 25} When a trial court imposes sentence for any of the classified felonies set forth at R.C. 2967.28(B), it must appropriately advise the defendant of mandatory postrelease control, or the sentence is void ab initio. *State v. Porterfield*, 11th Dist. Trumbull No. 2010-T-0005, 2010-Ohio-4287, ¶ 7. In this case, Eggers pled guilty to, and was sentenced for, one count of Felony Murder, in violation of R.C. 2903.02(B), an unclassified felony, not subject to the dictates

of R.C. 2967.28.

{¶ 26} In *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E. 2d 462, ¶ 36-37, the Supreme Court addressed parole and postrelease control in the context of a conviction for an unclassified felony:

However, an individual sentenced for aggravated murder such as Clark is not subject to postrelease control because that crime is an unclassified felony to which the postrelease-control statute does not apply. R.C. 2967.28. Instead, such a person is either ineligible for parole or becomes eligible for parole after serving a period of 20, 25, or 30 years in prison. See R.C. 2929.03(A)(1); 2967.13(A). Parole is also a form of supervised release, but it is not merely an addition to an individual's sentence. When a person is paroled, he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release. R.C. 2967.02(C); 2967.13(E); 2967.15(A); 2967.16(C)(1). If a paroled person violates the various conditions associated with the parole, he or she may be required to serve the remainder of the original sentence; that period could be more than nine months. Ohio Adm.Code 5120:1-1-19(C).

Even after a prisoner has met the minimum eligibility requirements, parole is not guaranteed; the Adult Parole Authority "has wide-ranging discretion in parole matters" and may refuse to grant release to an eligible offender. * * * Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R. 11 colloquy. * * *

{¶ 27} Similarly to this case, one of the issues in *Clark* was whether the defendant's guilty plea had been knowing, voluntary, and intelligent, as required by Crim.R. 11(C). At issue was the fact the trial court had advised appellant in the Crim.R. 11(C) colloquy that he would be subject to mandatory postrelease control, as set forth at R.C. 2967.28, which was also made part of the judgment entry, not that he would be subject to parole. On appeal, the Eleventh District Court of Appeals determined that the trial court had substantially complied with the requirements of Crim.R. 11(C), since the trial court had correctly advised appellant that the maximum penalty for aggravated murder was life imprisonment without parole.

{¶ 28} The Supreme Court of Ohio reversed the appellate court, holding that the trial court's Crim.R. 11 colloquy failed to meet the substantial compliance standard. The court held, in pertinent part:

> The trial judge was not required to discuss postrelease control or parole in Clark's plea colloquy under Crim.R. 11(C)(2), as Clark was not eligible for postrelease control given his plea to an unclassified felony. See R.C. 2967.28(B) and (C). When he expanded on the information set forth in the rule, the trial judge obscured the relatively straightforward maximum penalties for Clark's crimes. The judge described a decidedly different form of release than the one Clark actually faced under the law, a hybrid system that combined the mandatory term of years and the maximum possible sentences associated with postrelease control with the uncertainty of release associated with parole.

> Such an incorrect recitation of the law fails to meet the substantial compliance standard. If a trial judge chooses to offer an expanded explanation of the law in a Crim.R. 11 plea colloquy, the information conveyed must be accurate.

The rule is in place to ensure that defendants wishing to plead guilty or no contest do so knowingly, intelligently, and voluntarily. Because of the substantial misinformation that the trial judge provided to the defendant in this case, the defendant could not have entered his plea knowingly, intelligently, and voluntarily. The fact that the trial court provided some correct information as well does not alter this conclusion, because the correction (sic) information was not provided in such a manner as to remedy the erroneous information.

Despite the failure to substantially comply with Crim.R. 11, the trial judge did not simply ignore his duties under Crim.R. 11(C)(2)(a). Because the trial judge partially complied with the rule, Clark must show that he was prejudiced by the trial court's misinformation to successfully vacate his plea. * * * Although it discussed prejudice in its opinion, the court of appeals did not reach a conclusion on the issue. We therefore remand the case for a full determination of prejudice.

*Clark*, 2008-Ohio-3748, at ¶ 38-40.

{¶ 29} On remand, the Eleventh District Court of Appeals held that the defendant had suffered no prejudice as a result of the trial court's failure to explain parole properly. *State v. Clark*, 11th Dist. Ashtabula No. 2006-A-0004, 2008-Ohio-6768. The Eleventh District explained that the defendant "has presented no evidence and points to no evidence in the record suggesting that his plea would have been otherwise had he known the actual conditions of parole." *Id.* at ¶ 16. The court concluded that "[w]ithout some evidence that [the defendant] was motivated by the expectation of being subject to post-release control upon release, we must affirm the plea." *Id.* at ¶ 22. See also *State v. Stokes*, 8th Dist. Cuyahoga No. 93154,

2010-Ohio-3181; *State v. Eberle*, 12th Dist. Clermont No. CA2009-10-065, 2010-Ohio-3563.

{¶ 30}   There is nothing in the record to suggest Eggers would not have entered his guilty plea had the trial court not erroneously informed him that he was subject to a mandatory five-year term of postrelease control.   Therefore, Eggers has failed to demonstrate prejudice resulting from the trial court's error in discussing and sentencing Eggers to a five-year term of postrelease control.   We will, however, vacate that portion of the sentence imposing a five-year term of postrelease control.

{¶ 31}   Eggers's Second Assignment of Error is overruled.


## IV. Conclusion

{¶ 32}   The portion of Eggers's sentence imposing a five-year term of postrelease control is Vacated.   Both of Eggers's assignments of error having been overruled, the judgment of the trial court is Affirmed in all other respects.

. . . . . . . . . . . . .

WELBAUM, J., concurs.
DONOVAN, J., concurs in judgment only.


Copies mailed to:

Lisa M. Fannin
Christopher W. Thompson
Hon. Douglas M. Rastatter