[Cite as *State v. Frisbie*, 2024-Ohio-5523.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio                                                    Court of Appeals No.  WM-23-017

    Appellee                                                  Trial Court No.  98CR000013

v.

Shane A. Frisbie                                             **DECISION AND JUDGMENT**

    Appellant                                                 Decided:  November 22, 2024

* * * * *

Katherine J. Zartman, Williams County Prosecuting Attorney,
for appellee.

Shane A. Frisbie, pro se.

* * * * *

**MAYLE, J.**

**{¶ 1}** The defendant-appellant, Shane A. Frisbie, appeals an order of the Williams County Court of Common Pleas, dated December 7, 2023, that denied his motion to withdraw his guilty plea. For the following reasons, we affirm.

## I.  Background

**{¶ 2}** In February of 1998, Frisbie was indicted for the aggravated murder of his ex-girlfriend and carrying a concealed weapon.  A few months later, Frisbie pleaded guilty to

aggravated murder, in violation of R.C. 2903.01, and the state agreed to dismiss the concealed weapon charge. On July 13, 1998, the court entered a journal entry that memorialized the terms of the plea agreement—including an acknowledgment by Frisbie's trial counsel that the aggravated murder offense was punishable "by a mandatory sentence of life imprisonment with parole eligibility after serving twenty (20) years of imprisonment, and a fine of up to $25,000.00." The entry also states that the court advised Frisbie that "[a]fter being released from prison, [he] may have up to five (5) years of post-release control."

{¶ 3} On August 19, 1998, the trial court sentenced Frisbie to life imprisonment with parole eligibility after serving 20 years. The sentencing entry states that Frisbie was subject to post release control "up to a maximum of five (5) years." Frisbie did not appeal his conviction or sentence.

{¶ 4} On September 2, 1998—i.e., two weeks after he was sentenced in this case—Frisbie pled guilty to conspiracy to commit aggravated murder, in a different case in the same court ("the conspiracy case"). In the conspiracy case, the trial court sentenced Frisbie to serve five years in prison, to be served consecutively to the instant case, for an aggregate sentence of twenty-five years to life in prison.

{¶ 5} Nearly twenty-five years later, on June 6, 2023, a hearing was held before the Ohio Parole Board regarding Frisbie's "first statutory eligibility" for parole. The board issued a written decision that same day, finding that Frisbie "is not suitable for release at this time." Frisbie's next opportunity for parole is in 2033.

2.

**{¶ 6}** On October 12, 2023, Frisbie, acting pro se, moved to withdraw his guilty plea in this case. Frisbie attached a number of exhibits to his motion, including a letter dated July 6, 2023 from the Williams County Clerk of Courts stating that a transcript from his 1998 change-of-plea hearing could not be prepared because the "notes and recordings" from the case are no longer available. Frisbie also attached the decision from the Ohio Parole Board, and the September 2, 1998 "guilty plea and sentencing journal entry" from the conspiracy case.

**{¶ 7}** The trial court denied Frisbie's motion, without holding an evidentiary hearing, finding that "[a]ll of the issues" raised by Frisbie were barred by res judicata. Frisbie appealed.

## II. Law and Analysis

**{¶ 8}** "[A] trial court may grant a defendant's post-sentence motion to withdraw a guilty plea to 'correct a manifest injustice.'" *State v. Straley*, 2019-Ohio-5206, ¶ 13-14, citing Crim.R. 32.1. A "'manifest injustice' is a clear or openly unjust act, . . . and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice." (Citations omitted.) *Id.* The term "has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Id.,* quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. *Id.,* citing *Smith* at paragraph one of the syllabus.

**{¶ 9}** Crim.R. 32.1 does not provide a time limit for moving to withdraw after a sentence is imposed. However, "an undue delay between the occurrence of the alleged cause for

3.

withdrawal and the filing of the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *Id.* at ¶ 15, citing *Smith* at 264. Generally, res judicata bars a defendant from raising claims in a Crim.R. 32.1 post-sentencing motion to withdraw a guilty plea that he raised, or could have raised, on direct appeal. *Id.,* citing *State v. Ketterer,* 2010-Ohio-3831, ¶ 59.

{¶ 10} An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard. *Smith* at paragraph two of the syllabus. *Id.* The term "abuse of discretion" implies that the court's attitude is "unreasonable, arbitrary or unconscionable." *State v. Adams,* 62 Ohio St.2d 151, 157 (1982).

{¶ 11} Frisbie failed to set forth a statement of assignments of error as required by App.R. 16(A)(3). Although App.R. 12(A)(2) authorizes a court of appeals to disregard any unassigned error, we will address Frisbie's arguments and consider them within the context of whether the trial court abused its discretion in denying his motion. "Fairness and justice are best served when a court disposes of a case on the merits." *Rothschild v. Humility of Mary Health Partners*, 2005-Ohio-5481, ¶ 5 (7th Dist.), quoting *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189 (1982).

### A. Frisbie failed to show that his plea agreement was breached.

{¶ 12} The impetus for Frisbie's October 2023 motion to withdraw his 1998 guilty plea was the parole board's decision to deny him parole in June 2023. Frisbie raised many claims in support of his quest to withdraw his plea, but his principal argument is that "the State breached the plea [agreement] by not releasing him after [serving] 25 years."

4.

{¶ 13} In its decision, the trial court found that there was "simply nothing in the record" to support a finding that the state made "any such representation to [release Frisbie]." To the contrary, under the terms of the plea agreement, Frisbie was sentenced to *"life imprisonment, with parole eligibility after serving [25] years of imprisonment."* (Emphasis added.) Frisbie's eligibility for parole did not guarantee that parole would be granted. *State v. Threats*, 2016-Ohio-8478, ¶ 19 (7th Dist.), citing *State v. Clark,* 2008-Ohio-3748, ¶ 37. And, as noted by the trial court, the prosecuting attorney—who was a party to the plea agreement—had "no control" over the parole board's future decision regarding parole. Here, the parole board denied release due to Frisbie's "brutal homicide of a defenseless female victim" and because he "contract[ed]" from jail to have a witness "murdered." In support of its decision, the parole board found that Frisbie "exhibits limited remorse for his crimes and minimizes his role therein" and "lack[s] . . . insight into his triggers to re-offend."

{¶ 14} We find no evidence to support Frisbie's claim that he was ever promised release after serving 25 years in prison or that the plea agreement was otherwise "breached."

### B. Res judicata bars Frisbie's arguments relating to the trial court's incorrect post-release control advisement.

{¶ 15} Next, Frisbie argues that the trial court incorrectly advised him during his change-of-plea hearing that he would be subject to post-release control upon his release from prison. Frisbie claims that due to this error, he entered his plea "less than" knowingly, intelligently, and voluntarily.

5.

{¶ 16} It is undisputed that the trial court provided misinformation on the issue of post release control during Frisbie's change-of-plea hearing. "[A]n individual sentenced for aggravated murder . . . is not subject to post release control, because that crime is an unclassified felony to which the postrelease statute does not apply." *Clark* at ¶ 36; *see also State v. Eggers,* 2013-Ohio-3174, ¶ 25 (2d Dist.) ("[A]n unclassified felony [is] not subject to the dictates of R.C. 2967.28 ['Post-release control'].")  In the journal entry memorializing the plea, however, the trial court incorrectly advised Frisbie that he faced "*up to five (5) years of post-release control*" in addition to "life imprisonment with parole eligibility after serving 20 years of imprisonment." (Emphasis added). The sentencing entry contains the same mistake.

{¶ 17} Frisbie could have appealed his sentencing judgment and raised the post-release control issue at that time. He did not. "Res judicata generally bars a defendant from raising claims in a Crim.R. 32.1 postsentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal." *Straley,* 2019-Ohio-5205, ¶ 23, citing *State v. Ketterer*, 2010-Ohio-3831, ¶ 59.  Thus, the trial court properly concluded that Frisbie's arguments relating to the supposed impact of the post-release control advisements on the voluntariness of his plea were barred by res judicata. *Accord State v. Pepper*, 2023-Ohio-2611, ¶ 17-18 ("There is nothing in the record to suggest that Pepper's claims regarding the validity of his plea could not have been raised in his direct appeal.").

{¶ 18} Moreover, even if this claim was not barred by res judicata, the plea agreement in the record reflects that the trial court correctly advised Frisbie that the aggravated murder offense

6.

carried a mandatory prison sentence of 20 years to life, and Frisbie's counsel acknowledged this with his signature. The trial court's misstatement regarding post-release control did not add to the maximum penalty Frisbie faced—life imprisonment—nor did it suggest that Frisbie would be released early. Although Frisbie claims to have been "induce[d]" to plea guilty based on his supposed "misunderstanding" that he would be placed on post release control, there is simply nothing "on the face of the record" to support Frisbie's assertions that he would not have pled guilty but for the trial court's misstatement regarding post release control. *See State v. Dangler*, 2020-Ohio-276, ¶24. Accordingly, Frisbie's arguments were properly rejected by the trial court for this additional reason as well.

### C. There is no evidence in the record that Frisbie's counsel improperly induced him to enter the guilty plea.

{¶ 19} Frisbie also argues that "promises" made by his counsel rendered his plea involuntary. He claims that his trial counsel "promised" him, on the one hand, that if Frisbie accepted the plea, he "would be released after 25 years of incarceration" and, on the other hand, that he would "most likely" be sentenced to death if he did not plead guilty. Frisbie alleges—for the first time on appeal—that evidence of those conflicting promises can be found by reviewing "phone conversations" between trial counsel and himself "from when [Frisbie] was incarcerated at CCNO [Corrections Center of Northwest Ohio]." Those recordings are not in the record, and Frisbie "requests" that this court gather that evidence for him. The state counters that the death penalty was "never an option" because "the only penalty available . . . at the time" was a

7.

mandatory sentence of life imprisonment with parole eligibility after serving 20 years of imprisonment, *which Frisbie was advised of and acknowledged.*

{¶ 20} As we have acknowledged, the plea agreement correctly stated the maximum penalty for the offense to which Frisbie was pleading guilty. Thus, even if trial counsel misadvised him regarding early release or the death penalty, that misinformation was corrected by the time Frisbie pled guilty. Moreover, the alleged "phone conversations" between Frisbie and his trial counsel are not part of the record, and "[a] party cannot introduce new evidence on appeal." *State ex rel. Parker Bey v. Byrd*, 2020-Ohio-2766, ¶ 20.

{¶ 21} Accordingly, we reject Frisbie's claim that misinformation provided by trial counsel created a manifest injustice warranting the withdrawal of his plea.

**D. Frisbie fails to establish a claim of ineffective assistance of counsel**.

{¶ 22} Frisbee complains that he received ineffective assistance of counsel when counsel allowed him "to enter into an agreement" containing a post-release provision, which counsel "either knew or should have known was not applicable to [him]."

{¶ 23} "To establish that trial counsel was ineffective, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *State v. Bunch,* 2022-Ohio-4723, ¶ 26, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The two-part test applies when a defendant claims that he received ineffective assistance of counsel in relation to a guilty plea. *Hill v. Lockhart*, 474 U.S. 53, 58 (1985); *State v. Xie*, 62 Ohio St.3d 521, 524 (1992), citing *Strickland*. To show prejudice in relation to a guilty

8.

plea, "'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lockhart* at 59; *see also Ketterer*, 2006-Ohio-5283, at ¶ 89. The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697.

{¶ 24} First, Frisbie cannot show that he was prejudiced by counsel's failure to object to the post-release control advisement. Frisbie is not subject to post-release control as to his aggravated murder conviction because it is an unclassified felony. Indeed, "[t]he language in the judgment entry referencing post-release control had no operative effect [and] [t]herefore, [Frisbie] was not prejudiced in any way by its inclusion." *State v. Richardson*, 2019-Ohio-3490, ¶ 23 (10th Dist.).

{¶ 25} Moreover, this claim could have been raised on direct appeal and is therefore barred by res judicata. *State v. Blanton*, 2022-Ohio-3985, ¶ 2 ("[W]hen the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction [ineffective assistance of counsel] claim is barred.").

**E. The timing of Frisbie's motion supports the trial court's determination.**

{¶ 26} Finally, the fact that Frisbie waited *25 years* to challenge his plea casts doubt on the credibility of his claims. An "undue delay between the occurrence of the cause for withdrawal of a guilty plea and the filing of the motion to withdraw 'is a factor adversely

9.

affecting the credibility of the movant and militating against granting the motion.'" (Citations omitted.) *Peppers* at ¶ 16, quoting *State v. Rogers,* 2013-Ohio-3246, ¶ 38 (8th Dist.).

### III. Conclusion

{¶ 27} For all the foregoing reasons, we find that the trial court did not abuse its discretion in denying Frisbie's motion to withdraw his plea. We find Frisbie's arguments not well-taken, and we affirm the trial court's December 7, 2023 decision denying his motion.

{¶ 28} Pursuant to App.R. 24, Frisbie is ordered to pay the costs of this appeal. It is so ordered.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.

Charles E. Sulek, P.J.
_____
CONCUR.                                                    JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.