OPINION
{¶ 1} Defendant-appellant Michael Buhrman appeals from the denial of his petition for post-conviction relief, without a hearing. Buhrman contends that the trial court erred by denying his petition without a hearing. We agree with Buhrman that his unrebutted affidavit, which is not belied by the record, establishes a prima facie basis for relief. Furthermore, although the trial court discussed the issue of the timeliness of Buhrman's petition for post-conviction relief, it did not resolve that issue, and it is not clear that Buhrman's petition was untimely filed. Accordingly, the judgment of the trial court dismissing Buhrman's petition for post-conviction relief, without a hearing, is reversed, and this cause is remanded for further proceedings.
 I {¶ 2} In 1992, Buhrman was indicted in Greene County upon three counts of Aggravated Murder, with death penalty specifications. In early 1993, Buhrman entered into a plea agreement with the prosecuting authorities in Greene County, and Montgomery County, and with federal prosecuting authorities. At the time, a nineteen-count indictment was pending against Buhrman in Montgomery County.
 {¶ 3} Pursuant to the terms of the plea agreement, the State dismissed the three counts of Aggravated Murder, and Buhrman pled guilty to three counts of Involuntary Manslaughter. Buhrman also pled guilty to nine of the nineteen counts pending in Montgomery County, Ohio.
 {¶ 4} Part of the plea agreement was that if Buhrman "fully cooperated," and if he would "provide truthful and complete" information of his knowledge of illegal activity, the "State would write a factual account of the Defendant's full cooperation and present that to the Parole Board and ask that the Defendant's full cooperation be given consideration and his application when it comes up for parole."
 {¶ 5} In 1996, Buhrman filed a petition for post-conviction relief. The State moved for summary judgment, and Buhrman's petition was dismissed, without a hearing. We affirmed the dismissal of that petition in State v. Buhrman (Sept. 12, 1997), Greene App. No. 96-CA-145.
 {¶ 6} The petition for post-conviction relief which with this appeal is concerned was filed on December 18, 2001. In this petition, Buhrman alleges that the State breached its plea agreement by failing to present to the Parole Board an account of Buhrman's cooperation, asking that that cooperation be given consideration in connection with Buhrman's application for parole.
 {¶ 7} The State filed a motion for summary judgment, contending that Buhrman "failed to set forth any documentary evidence tending to show that the State failed to perform its end of the bargain." In support of its motion, the State argued that "Buhrman has not been cooperative and did not provide all of the information that he promised to provide." The State did not provide any affidavits or other documentary evidence in support of this claim.
 {¶ 8} In response, Buhrman sought discovery to locate any documentary evidence that might support his claim, but he also filed two affidavits in opposition to the State's motion for summary judgment. One of these contains forty-one numbered paragraphs indicating, in some detail, his claimed cooperation with prosecuting authorities. Without reciting herein all of these averments, the following constitute a representative sample:
 {¶ 9} "21. Also during this same time frame, [1995 and 1996], at the request of Law Enforcement Agents, on (3) three separate occasions, I once again wore a `wire' [in the form of a Sports Watch] during my visits with `Jeff Clemmer'; `Robert Clemmer'; and `Jon Mullons.'
 {¶ 10} "22. During these `visits' with `Jeff Clemmer'; `Robert Clemmer'; and `Jon Mullons'; I was able to lead all three of them into discussions, in which they not only implicated themselves but also several other individuals in any number of criminal activities.
 {¶ 11} "23. At the request of Law Enforcement Agents, in order to ensure that these visits would actually take place, I had my wife personally transport `Jeff Clemmer' and `Jon Mullons' on two separate occasions down to visit with me at M.C.I.
 {¶ 12} "24. While being housed at the Madison Correctional Institution, at the request of Law Enforcement Agents, I was able to not only convince `Jeff Clemmer,' but also `Robert Clemmer', that `Jeff Clemmer' had no other alternative but to assist and/or cooperate with both the F.B.I. and the O.O.C.I.C. Task Force, due to his extensive involvement in organized criminal activities.
 {¶ 13} "25. During this same time frame, at the request of Law Enforcement Agents, I not only made it possible but also arranged an actual meeting between the F.B.I. [Special Agent Thomas Mygrants], `Jeff Clemmer' and `Robert Clemmer,' in which they had numerous discussions in regards to `Jeff' and `Robert Clemmer's' possible cooperation with Federal, State, and Local Law Enforcement `agencies' and/or `agents.'
 {¶ 14} "26. While being housed at the Madison Correctional Institution at the request of Law Enforcement Agents, I was also able to not only convince my father `Daryl Buhrman' but also my brother `Von Buhrman,' to assist and/or cooperate with Federal, State, and Local Law Enforcement Agents.
 {¶ 15} "27. During this same time frame, at the request of Law Enforcement Agents, I not only made it possible but also arranged an actual meeting between the F.B.I. [Special Agent Thomas Mygrants]; the O.O.C.I.C. Task Force [unknown Agent]; both my father and brother, in which they fully cooperated with Law Enforcement Agents, even though they were not a party to my plea bargain agreement with the State of Ohio and the Federal Government.
 {¶ 16} "28. While being housed at the Madison Correctional Institution, at the request of Law Enforcement Agents, my wife and I were able to reach and obtain `any' number of `taped telephone conversations' of specific individuals [Targets] of the F.B.I. and O.O.C.I.C. Task Force, in their ongoing investigations of Federal, State, and Local Organized crime. Note: [all of these tape recorded telephone conversations were turned over to Law Enforcement Agents by Petitioner's wife.]" (Bracketed material in original.)
 {¶ 17} The State did not rebut Buhrman's affidavit with any affidavits or other evidentiary material.
 {¶ 18} The trial court granted the State's motion for summary judgment, and denied Buhrman's petition, without a hearing. From the denial of his petition, without a hearing, Buhrman appeals.
 II {¶ 19} Buhrman's assignments of error are as follows:
 {¶ 20} "The Trial Court violated the appellant's fifth,sixth, and fourteenth amendment rights when it:
 {¶ 21} "Granted The Appellee's summary judgment relief while there remained genuine issues of material fact in dispute.
 {¶ 22} "The Appellee's violated the appellant's due process rights guaranteed by the fifth, sixth, and fourteenth amendments to the united states constitution, when they failed to adhere to the terms of the plea-bargain agreement."
 {¶ 23} Essentially, Buhrman contends that the trial court erred by denying his petition for post-conviction relief, without a hearing, because his unrebutted affidavit establishes a prima facie case that Buhrman did cooperate with prosecuting authorities, but that those authorities did not honor their part of the plea agreement by reporting his cooperation to the Parole Board, together with a request that Buhrman's cooperation be considered in connection with his application for parole.
 {¶ 24} In its decision granting the State's motion for summary judgment, the trial court first discussed the issue of the timeliness of Buhrman's petition, but did not resolve that issue. Obviously, Buhrman's petition was filed outside the time allowed by R.C. 2953.23(A), but, as the trial court notes, an exception is made when the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, and certain other conditions are met. R.C. 2953.23(A)(1).
 {¶ 25} Buhrman contends, and the State does not deny, that he was informed of the fact that only four letters had been received by the Ohio Adult Parole Authority, which all contained negative or adverse information or recommendations, on September 28, 2001, while his application for parole was pending. He contends that he appeared before the Parole Board on October 18, 2001, and that he received notification that his application had been denied, on October 31, 2001. Had the Parole Board acted favorably, the claimed violation of the terms of the plea agreement of which Buhrman complains would arguably have become moot. Buhrman filed his petition on December 18, 2001, just forty-eight days after the denial of his application for parole.
 {¶ 26} Thus, the trial court has never adjudicated the timeliness issue, and it is not clear that Buhrman's petition must be dismissed upon the grounds that it was not timely filed. We take no position with respect to that issue, but that is something that the trial court may wish to consider upon remand.
 {¶ 27} The State argues that Buhrman has "failed to set forth any documentary evidence tending to show that the State failed to perform its end of the bargain." The State has never claimed, however, that prosecuting authorities did, in fact, send a letter or letters to the Ohio Adult Parole Board reciting Buhrman's cooperation; to the contrary, the State acknowledges that no such letters were sent.
 {¶ 28} The State contends, but has submitted no documentary proof in support of its contention, that Buhrman did not, in fact, cooperate with prosecuting authorities. The State citesState v. Kapper (1983), 5 Ohio St.3d 36, for the proposition that a defendant's own, self-serving affidavit is not sufficient to require the trial court to hold an evidentiary hearing on a petition for post-conviction relief. In that case, the petitioner's claim that his guilty plea was coerced was belied by the record, the transcript of the plea colloquy reflecting that it was not coerced. We understand State v. Kapper to stand for the proposition that where the affidavit of a petitioner for post-conviction relief is belied by the record, the petitioner's own, self-serving affidavit is not sufficient to require the trial court to hold an evidentiary hearing. In the case before us, the record does not belie Buhrman's averments, in his affidavit filed in the trial court on March 18, 2002, in response to the State's motion for summary judgment, setting forth his claimed cooperation with prosecuting authorities. Under these circumstances, we conclude that the trial court abused its discretion by rejecting Buhrman's claims, without an evidentiary hearing.
 {¶ 29} The State also cites State v. Calhoun (1999),86 Ohio St.3d 279, for the proposition that in reviewing a petition for post-conviction relief, "a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." In that case, the trial court had conflicting affidavits from the petitioner, setting forth claims that his trial counsel had been ineffective, and from the petitioner's trial counsel, contradicting the petitioner's affidavit. In the case before us, there are no affidavits, or other documentary evidence, contradicting Buhrman's averments. Furthermore, Buhrman's averments are not inherently incredible.
 {¶ 30} A decision not to credit an affidavit offered in support of a petition for post-conviction relief, or, by extension, in opposition to the State's motion for summary judgment, is confided to the discretion of the trial court.State v. Calhoun, supra, at 285. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law. Id. There are no findings of fact in the case before us indicating why the trial court has discounted Buhrman's averments in his affidavit. Furthermore, in the case before us, unlike inState v. Calhoun, supra, the judge who reviewed Buhrman's post-conviction relief petition is not the same judge who presided at the plea and sentencing hearings.
 {¶ 31} Under all of the circumstances, we conclude that the trial court abused its discretion by discounting the averments in Buhrman's affidavit detailing his claimed cooperation with prosecuting authorities. We conclude that Buhrman has set forth a prima facie basis for relief, entitling him to an evidentiary hearing. At that hearing, the State is obviously free to cross-examine Buhrman, and any other witnesses Buhrman may call, and to present witnesses and evidence, in its own behalf, tending to support the State's claim that Buhrman did not cooperate, or at least did not cooperate to any significant extent.
 {¶ 32} Buhrman's First Assignment of Error is sustained. His Second Assignment of Error is overruled, as moot.
 III {¶ 33} Buhrman's First Assignment of Error having been sustained, and his Second Assignment of Error having been overruled, as moot, the order of the trial court dismissing Buhrman's petition for post-conviction relief, without a hearing, is Reversed, and this cause is Remanded for further proceedings.
Brogan and Grady, JJ., concur.