[Cite as *State v. Eggers*, 2013-Ohio-3379.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2012-CA-33 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 11-CR-40 |
| v. | : | |
| | : | |
| ADAM EGGERS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of August, 2013.

. . . . . . . . . . .

LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Post Office Box 1608, Springfield, Ohio 45501
Attorney for Plaintiff-Appellee

ADAM EGGERS, #610-525, Lebanon Correctional Institution, Post Office Box 56, Lebanon, Ohio 45036
Defendant-Appellant, *pro se*

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1} Defendant-appellant Adam Eggers appeals from an order overruling his petition for post-conviction relief and his motion for additional discovery. Eggers contends that the trial court abused its discretion in overruling his petition for post-conviction relief

without holding an evidentiary hearing. Eggers further contends that the trial court erred in failing to grant his post-conviction request for additional discovery.

{¶ 2} We conclude that the trial court did not abuse its discretion in overruling Eggers's petition without holding an evidentiary hearing, because Eggers failed to submit evidentiary documents containing sufficient operative facts to demonstrate ineffective assistance of trial counsel. We further conclude that the trial court did not err in overruling Eggers's post-conviction motion for additional discovery. Accordingly, the judgment of the trial court is Affirmed.

## I. Course of the Proceedings

{¶ 3} In May 2010, Adam Eggers fired four shots into a residence in Springfield, Ohio, with the intention of killing Dustin Bryant. One of the shots went through a wall and struck Julie Snyder, killing her instantly. Eggers was indicted on one count of Aggravated Murder, R.C. 2903.01(A), with a firearm specification, two counts of Felony Murder, R.C. 2903.02(B), each with a firearm specification, one count of Felonious Assault, R.C. 2903.11(A)(2), with a firearm specification, one count of Improperly Discharging a Firearm at or into a Habitation, R.C. 2923.161(A)(1), and one count of Improper Handling of Firearms in a Motor Vehicle, R.C. 2923.16(B). Dkt. 1.

{¶ 4} Pursuant to a negotiated plea agreement, with a motion to suppress statements pending, Eggers pled guilty to Felony Murder, as charged in count three of the indictment, causing the death of another as a proximate result of improperly discharging a firearm at or into a habitation, in violation of R.C. 2903.02(B) and 2923.161(A)(1). In exchange for Eggers's guilty

plea, the State dismissed the firearm specification attached to count three and the remaining charges and specifications. The parties agreed that Eggers's sentence would be fifteen years to life.

{¶ 5} The trial court sentenced Eggers to life imprisonment with parole eligibility after fifteen years. The trial court also sentenced Eggers to a mandatory five-year term of post-release control. Dkt. 23. Eggers appealed from his conviction and sentence. On appeal, he contended that his plea was not knowingly, intelligently, and voluntarily made and that the trial court erred by including a term of post-release control in his sentence. We concluded that Eggers's plea was knowing, intelligent, and voluntary. We vacated the portion of the sentence imposing post-release control and affirmed the judgment and sentence in all other respects. *State v. Eggers*, 2d Dist. Clark No. 2011-CA-48, 2013-Ohio-3174.

{¶ 6} Eggers moved to withdraw his guilty plea, contending that he had made his plea under duress and coercion by his counsel. He stated that his trial counsel was ineffective in representing him and he had been denied his constitutional rights. The court overruled the motion, noting that Eggers was represented by experienced counsel, Eggers's rights had been carefully and completely explained to him, Eggers did not express any doubt that he understood his rights and that he wanted to give them up, and Eggers stated at the hearing that he was freely and voluntarily entering his guilty plea. The court concluded that there was no evidence that Eggers did not make his plea knowingly, voluntarily, and intelligently. Dkt. 31. Eggers did not appeal from the trial court's order denying his motion to withdraw his guilty plea.

{¶ 7} On February 10, 2012, Eggers filed a "Motion for Evidentiary and Exculpatory Evidence" in which he requested the trial court to order the State to provide additional evidence

to be used in Eggers's anticipated petition for post-conviction relief. Six days later, Eggers filed his petition for post-conviction relief, alleging that he received ineffective assistance of trial counsel when his trial counsel failed to adequately prepare for trial and that he was coerced into entering a guilty plea by his trial counsel. The motion for exculpatory evidence and the petition for post-conviction relief are the subject of this appeal.

{¶ 8} The trial court, without holding a hearing, reviewed the record and overruled Eggers's motion for exculpatory evidence and his petition for post-conviction relief. Specifically, the court found, in part:

> The defendant has not submitted sufficient evidentiary documents containing sufficient operative facts to show that he is entitled to any relief. From the record of the plea agreement, and the transcript of the plea hearing, it is clear that the defendant knew and understood he was entering a guilty plea for felony murder; that the Court complied with Crim.R. 11(C)(2) and that the defendant was under no coercion when he entered the plea knowingly, voluntarily and intelligently. Dkt. 41.

{¶ 9} From the order overruling his motions, Eggers appeals.

## II. The Trial Court Did Not Abuse its Discretion
## by Not Holding an Evidentiary Hearing

{¶ 10} Six of the seven assignments of error set forth by Eggers concern the trial court's failure to hold an evidentiary hearing prior to denying Eggers's petition for post-conviction relief.

{¶ 11}  Eggers's First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error state:

THE TRIAL COURT ERRED BY DISMISSING THE APPELLANT'S POST-CONVICTION PETITION WITHOUT HOLDING AN EVIDENTIARY HEARING, THUS ABUSING IT'S [SIC] DISCRETION, THUS PREJUDICING THE APPELLANT & VIOLATING HIS 1ST, 5TH, 6TH, 8TH & 14TH U.S. CONST. AMEND.S [SIC] AND ARTICLE I, SECTIONS 1, 9, 10 & 16 OF THE OHIO CONST.

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT DENIED THE APPELLANT'S PETITION WHEN RULING THAT INEFFECTIVE ASSISTANCE OF COUNSEL IS TO BE RAISED ON APPEAL WHEN THE EVIDENCE ATTACHED IS EVIDENCE THAT DEHORS THE RECORD, DUE TO NO TRIAL RECORD, THUS VIOLATING THE APPELLANT'S 1ST, 5TH, 6TH, 8TH & 14TH U.S. CONST. AMEND.S [SIC] AND ARTICLE I, SEC.S [SIC] 1, 9, 10 & 16 OHIO CONST.

TRIAL COURT ABUSED IT'S [SIC] DISCRETION WHEN IT DID NOT HOLD AN EVIDENTIARY HEARING AND RESPOND TO THE VARIOUS SWORN AFFIDAVIT'S [SIC] ATTACHED TO THE APPELLANT'S PETITION FOR RELIEF, THUS VIOLATING THE APPELLANT'S 1ST, 5TH, 6TH, 8TH & 14TH U.S. CONST. AMEND.S [SIC] AND ARTICLE I, SEC.S [SIC] 1, 9, 10 & 16 OF THE OHIO CONST.

THE TRIAL COURT ERRED WHEN IT DID NOT HOLD AN

EVIDENTIARY HEARING RELATING TO THE SEVEN GROUNDS FOR RELIEF PERTAINING TO INEFFECTIVE ASSISTANCE OF COUNSEL, THUS VIOLATING THE APPELLANT'S 1ST, 4TH, 5TH, 6TH, 8TH & 14TH U.S. CONST. AMEND.S [SIC] AND ARTICLE I, SEC.S [SIC] 1, 9, 10, 14 & 16 OF THE OHIO CONST.

THE TRIAL COURT ERRED WHEN IT DID NOT RELATE TO, REVIEW AND HOLD AN EVIDENTIARY HEARING FOR THE I.A.C. ISSUE FOR TRIAL COUNSELS [SIC] FAILURE TO FILE AN APPROPRIATE, MEANINGFUL AND EFFECTIVE MOTION TO SUPPRESS EVIDENCE OF THE GUN SHOT RESIDUE ALLEGED AGAINST THE APPELLANT AT TRIAL. SUCH ACT'S [SIC] BY TRIAL COUNSELS [SIC] INEFFECTIVENESS AND TRIAL COURTS [SIC] JUDICIAL MISCONDUCT VIOLATED THE APPELLANT'S 1ST, 4TH, 5TH, 6TH, 8TH & 14 U.S. CONST. AMEND.S [SIC] AND ARTICLE I, SEC.S [SIC] 1, 9, 10, 14 & 16 OHIO CONST.

TRIAL COUNSEL WAS INEFFECTIVE BELOW THE REQUIRED STANDARD FOR FAILING TO INVESTIGATE THE APPELLANT'S CASE; FOR FAILING TO SUBJECT THE PROSECUTIONS [SIC] CASE TO A MEANINGFUL ADVERSARIAL TESTING AND: MORE AND THE TRIAL COURT ERRED BY NOT RELATING TO THESE GROUNDS FOR RELIEF AND ABUSED IT'S [SIC] DISCRETION WHEN NOT HOLDING AN EVIDENTIARY HEARING, THUS, BOTH VIOLATED THE APPELLANT'S

1ST, 4TH, 5TH, 6TH, 8TH AND 14TH U.S. CONST. AMEND.S [SIC] AND ARTICLE I, SEC.S [SIC] 1, 9, 10, 14 & 16 OHIO CONST. RIGHTS.

{¶ 12} Eggers contends in these six assignments of error that the 42 exhibits attached to his petition for post-conviction relief establish that he received ineffective assistance of trial counsel and that he was coerced into entering his guilty plea. According to Eggers, these exhibits demonstrate that his counsel provided ineffective assistance in the following ways: failing to move to suppress the gun-shot-residue test and the statements he made to the police; failing to interview vital witnesses; failing to have Brad Locher undergo a second polygraph examination; and giving his mother bad advice regarding whether Eggers should agree to the plea deal offered by the State. Eggers contends that these exhibits are sufficient to demonstrate ineffective assistance of trial counsel or, at a minimum, are sufficient to require the trial court to hold an evidentiary hearing prior to overruling his petition for post-conviction relief. We do not agree.

**A. Eggers Had the Burden of Submitting Evidentiary Documents Containing Sufficient Operative Facts to Demonstrate the Lack of Competent Counsel and that the Defense Was Prejudiced by Counsel's Ineffectiveness**

{¶ 13} Petitions for post-conviction relief are governed by R.C. 2953.21(A)(1)(a), which provides, in pertinent part:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the

Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

{¶ 14} An appellate court reviews a trial court's decision granting or denying a post-conviction petition under R.C. 2953.21 under an abuse of discretion standard. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. The term "abuse of discretion" has been defined as a decision that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 15} "[I]n a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980).

{¶ 16} "A hearing is not automatically required whenever a petition for post-conviction relief is filed. The test is whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and the files and records in the case." *State v. Strutton*, 62 Ohio App.3d 248, 251, 575 N.E.2d 466 (2d Dist.1988), citing *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). A court may overrule the petition "without a hearing when the record, including the dialogue conducted between the court and the defendant pursuant to Crim. R. 11, indicates that the petitioner is not entitled to relief and that the

petitioner failed to submit evidentiary documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises." *State v. Kapper*, 5 Ohio St. 3d 36, 38, 448 N.E.2d 823 (1983).

**B. The Affidavits Submitted with Eggers's Petition Do Not Contain Sufficient Operative Facts to Establish Ineffective Assistance of Counsel**

**{¶ 17}** Affidavits may be submitted in support of post-conviction relief motions. R.C. 2953.21. "However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents." *State v. Calhoun*, 86 Ohio St.3d 279, 284, 714 N.E.2d 905 (1999). "[W[here a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." *Id.*

**{¶ 18}** The evidentiary documents submitted with Eggers's petition include six sworn affidavits by friends and family of Eggers. Exhibit 11 to Eggers's petition for post-conviction relief is an affidavit from a personal friend of Eggers, Joseph Dugan. The affidavit states, in pertinent part:

> On the night of May 15, 2010, I walked up to [Eggers's] car, Brad [Locher] was in the passenger seat. He was the only one in the car. He was handling a small semi-auto handgun. I asked him "What the hell are you doing?" He said not to worry, it was not loaded. I told him he was stupid and to put the gun away. I walked away at that point, got in my truck and left.

* * * I feel from Brad's response to me asking him "what the hell are you doing" and his response being "not to worry, it was not loaded" is as if Brad was in possession/control of the gun he was handling.

{¶ 19} Eggers contends throughout his petition for post-conviction relief and his appellate brief that Brad Locher is a liar who framed Eggers for the murder of Snyder. However, assuming the truthfulness of the averments in Dugan's affidavit, at most the affidavit establishes that Locher had a gun in his hands at some point during the evening that Julie Snyder was murdered. We conclude that Dugan's affidavit does not contain sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness, or that Eggers's guilty plea was coerced or less than knowingly, voluntarily, and intelligently made.

{¶ 20} Exhibit 23 to Eggers's petition is a February 15, 2012 affidavit of Robert Buck, Eggers's stepfather. Buck averred that Eggers's trial counsel, Adam Nemann, was initially paid $6,000 as a retainer fee on January 17, 2011, and Nemann visited Eggers in jail on that same day. In the latter portion of January 2011, Nemann was paid another $14,000 by Eggers's family. Buck avers that this additional payment was made despite the fact that "Mr. Nemann had done nothing to this date in Adams [sic] defense." Buck also averred that he and his wife met with and were interviewed by Nemann in February 2011. According to Buck, Nemann explained to him that Brad Locher had stated to police that Eggers had committed the murder and that Buck had assisted in hiding the murder weapon.

{¶ 21} Buck's affidavit consists primarily of general allegations of deficiencies in Nemann's representation of Eggers and some contradictory statements regarding this

representation. Furthermore, although Buck averred that Nemann "had done nothing to this date" in the defense of Eggers, the date referred to by Buck was only a couple of weeks into Nemann's representation of Eggers. Indeed, Buck stated in his affidavit that Nemann had visited Eggers in jail on January 17, 2011, and interviewed Buck and his wife in early February 2011.

{¶ 22} Assuming the truthfulness of the averments in Buck's affidavit, we conclude that the affidavit does not contain sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness, or that Eggers's guilty plea was coerced or less than knowingly, voluntarily, and intelligently made.

{¶ 23} Attached as Exhibits 16, 24, and 36 to Eggers's petition are three affidavits of Paula Buck, Eggers's mother. In Exhibit 16, Ms. Buck described the events as she recalled them from the evening of May 15, 2010. She explained that she heard her son's car pull up into her garage after midnight and she then heard Eggers and Brad Locher arguing. Eggers informed her that Julie Snyder had been in a shooting. Eggers and Locher then left the house, and Ms. Buck subsequently left the house to go purchase cigarettes at a gas station. On her way there, she saw that the police had pulled over the vehicle in which Eggers was riding. The police subsequently obtained a search warrant to search Ms. Buck's residence, and Eggers was identified as a suspect in the murder of Snyder and taken to the police station for questioning.

{¶ 24} In Exhibit 24, Ms. Buck addressed the retention of Adam Nemann as Eggers's trial counsel. Nemann visited Eggers in jail on the same day that Ms. Buck retained him as trial counsel. According to Ms. Buck, on February 2, 2011, she and her husband drove to Nemann's office to be interviewed. During this interview, Ms. Buck was provided with several police interviews of Brad Locher. Ms. Buck stated that she could refute all of Locher's lies about her

and her son.   Nemann explained to Ms. Buck that he was aware of Locher's chronic lying and that he planned to have Locher undergo another polygraph test, despite the fact that Locher had already passed a polygraph.   According to Ms. Buck, Nemann also alerted her that Eggers's gun shot residue test came back positive for gun-shot residue, but that Nemann "would file the appropriate motion attacking the test and its results."   Nemann also requested another $10,000 to hire an independent investigator.

{¶ 25}   In her third and final affidavit, Exhibit 36, Ms. Buck described her interactions with Nemann leading up to her son's guilty plea.   According to Ms. Buck, Nemann consistently claimed that the case would proceed to trial and that he was filing the proper motions in defense of Eggers.   Ms. Buck stated that she had "many interactions" with Nemann over the phone and in person.   However, she averred that it eventually became more difficult to get in contact with Nemann.   On June 1, 2011, Nemann visited Eggers in jail.   Nemann subsequently called Ms. Buck and told her that he had recently reviewed new evidence that showed Eggers's guilt in the death of Julie Snyder.   Nemann told Ms. Buck that he had worked out a plea with the State and that he wanted her help in talking to Eggers about accepting the plea deal.   Ms. Buck then stated that:

> Mr. Nemann told me that he could get [Eggers] a 15 year to life sentence with an early parole and if Adam did not take this plea and lost at trial that Judge Rastatter has made it clear that he (Rastatter) would give my son the maximum sentence and Mr. Nemann told me how corrupt and bad Judge Rastatter was and that Adam had to take the plea, and for me not to forget the New Indictment, which was bad too.

{¶ 26}    On June 9, 2011, Ms. Buck asked Nemann in person about the new evidence that led to his advice that Eggers take the plea deal.   According to Ms. Buck:

> Mr. Nemann said that he spoke to B.C.I. and had found out the G.S.R. Test was administered properly and the Polygraph administered to Locher was performed adequately and Locher was quetioned [sic] properly and that Locher's latest police interview incriminated [Eggers] and my Husband and it may lead to other arrest and that he had the investigator question Nicole Bowers and David Hall Jr. and both retracted their statements and was refusing to come to trial against [Locher].

{¶ 27}    When Eggers arrived at the courtroom on June 9th, Nemann explained to Eggers the evidence against him and urged Eggers to take the plea deal.   Ms. Buck also told Eggers to take the plea deal.   Ms. Buck concluded her affidavit by stating that Nemann had deceived her and her son and had essentially played on her love for her son to steal $25,000 from her in attorney fees.

{¶ 28}    Eggers contends that the affidavits of Ms. Buck demonstrate that he received ineffective assistance of trial counsel and was coerced into entering a guilty plea.   For example, Eggers points out that his counsel failed to file a motion to suppress the statements he made to the police and the results of a gun-shot-residue test.   However, Eggers's counsel did in fact file a motion to suppress the statements Eggers made to the police.   Dkt. 18.   Furthermore, Eggers has not submitted any evidence that a motion to suppress the gun-shot residue test would likely have been successful.   Also,  it could have been trial strategy for Eggers's trial counsel to wait to challenge the findings on cross-examination at trial.   Of course, Eggers's decision to plead guilty

prevented a trial from taking place.

**{¶ 29}** Eggers also points to the allegations in Ms. Buck's affidavits that trial counsel had informed Eggers and herself that the trial judge was corrupt and that Eggers would lose at trial and receive a maximum sentence. A lawyer's sincere assessment of the likely outcome of a defendant's decision to reject a plea offer and go to trial does not constitute ineffective assistance of counsel unless it is so clearly unwarranted that no reasonable attorney would offer that assessment. There is no evidence here that Nemann's assessment was either insincere or unwarranted.

**{¶ 30}** Furthermore, let us assume, for purposes of analysis, that Nemann actually made the comment about the trial judge that Ms. Buck attributes to him. Although a lawyer may have contrasting duties as an officer of the court, the lawyer's duty to his client is not breached when the lawyer offers his sincere opinion concerning the character of the trial judge, even when that opinion is an unflattering one.

**{¶ 31}** Assuming the truthfulness of the contents of Ms. Buck's affidavits, we conclude that the affidavits do not contain sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness or that Eggers's guilty plea was coerced or less than knowingly, voluntarily, and intelligently made.

**{¶ 32}** Attached as Exhibit 37 to Eggers's petition is an affidavit of Melissa Dugan, a close friend of Eggers and his family. Dugan avers that she has worked in the legal field in Clark County since 1989. Dugan accompanied Eggers's mother to Eggers's arraignment on January 27, 2011. At the arraignment, Dugan offered her assistance to Eggers's trial counsel. Nemann subsequently contacted Dugan and asked her to copy documents out of Eggers's court case files

and fax them to him, which she did. On June 3, 2011, Dugan received information from her husband about the night of the murder that she believed could prove to be beneficial to Eggers. She presented this information to Nemann, but Dugan did not identify in her affidavit what this information was. Dugan believed that Nemann did not give Eggers the necessary priority and opined that Nemann should have conducted additional discovery and filed additional motions.

{¶ 33} Dugan does not aver that she has personal knowledge of all the work performed by Nemann in preparation for Eggers's trial. Furthermore, her vague allegations that her husband had key information to use in the defense of Eggers, which Nemann ignored at the last hour, are insufficient to demonstrate ineffective assistance of counsel. Assuming the truthfulness of the contents of Dugan's affidavit, we conclude that the affidavit does not contain sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness, or that Eggers's guilty plea was coerced or less than knowingly, voluntarily, and intelligently made.

{¶ 34} Overall, the affidavit evidence submitted with Eggers's petition for post-conviction relief is largely conclusory and often self-contradictory. Moreover, many of the statements in the affidavits are based on opinions rather than objective facts gleaned from personal knowledge. We conclude that even if we assume the truthfulness of the allegations contained in the affidavits, Eggers has failed to satisfy his burden pursuant to R.C. 2953.21.

**C. The Non-Affidavit Documents Submitted with Eggers's**

**Petition Do Not Contain Sufficient Operative Facts**

**to Demonstrate Ineffective Assistance of Counsel**

{¶ 35} Eggers submitted numerous other exhibits with his petition for post-conviction relief. These exhibits consisted of text messages; phone records; pictures; letters from his trial counsel; the transcripts from police interviews with Eggers, Brad Locher, and other potential witnesses; a report from a polygraph of Locher; property receipts from the Springfield Police Department; Locher's criminal history; a gun-shot-residue test showing gun-shot residue on samples from Eggers; an inmate visitor log report; legal invoices from his trial counsel; and articles from the internet relating to gun-shot residue.

{¶ 36} We have reviewed all of the exhibits attached to Eggers's petition for post-conviction relief. Many of the exhibits contain information that would be damaging to Eggers's defense. It is clear that Nemann relayed the damaging nature of this evidence to Eggers. We are unpersuaded by Eggers's contentions that the exhibits he submitted with his petition for post-conviction relief establish his innocence, demonstrate ineffective assistance of counsel, and prove that his guilty plea was less than knowing, intelligent, and voluntary. Eggers's petition fails to contain sufficient operative facts to demonstrate ineffective assistance of counsel or require the trial court to hold an evidentiary hearing.

{¶ 37} Eggers's First, Second, Third, Fourth, Fifth, and Sixth Assignments of Error are overruled.

### III. The Trial Court Did Not Err in Denying Eggers's
### Post-Conviction Motion for Additional Discovery

{¶ 38} Eggers's Seventh Assignment of Error states:

TRIAL COUNSEL WAS INEFFECTIVE BELOW A REASONABLE

STANDARD FOR FAILING TO FILE A SECOND DEMAND OF DISCOVERY FOR EXCULPATORY EVIDENCE DURING THE TRIAL PROCESS AND THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION FOR DENYING APPELLANT'S MOTION FOR EVIDENTIARY AND EXCULPATORY EVIDENCE TO SUPPORT HIS POST-CONVICTION RELIEF. BOTH TRIAL COUNSEL AND TRIAL COURTS [SIC] ACT'S [SIC] VIOLATED BRADY VIOLATIONS, DUE PROCESS AND EQUAL PROTECTION OF LAW, THUS VIOLATING APPELLANT'S 1ST, 4TH, 5TH, 6TH, 8TH & 14TH U.S. CONST. ADMEND.S [SIC] AND ARTICLE I, SEC.S [SIC] 1, 9, 10, 14 & 15 OHIO CONST.

**{¶ 39}** In this assignment of error, Eggers contends that the trial court erred in denying his post-conviction request for additional discovery. Eggers further contends that his trial counsel was ineffective for not obtaining this additional discovery, which led Eggers to become scared and enter into a guilty plea.

**{¶ 40}** The evidence sought by Eggers appears to be evidence relating to the lie-detector test of Brad Locher, transcripts of police interviews with Brad Locher, and the gun shot residue test performed on Eggers. Evidence relating to these subjects are attached to Eggers's petition for post-conviction relief and the affidavits attached to his petition consistently state that Eggers's counsel discussed these matters with Eggers. According to Eggers and his mother, Nemann explained to them that this evidence would result in a guilty verdict against Eggers if he chose to go to trial. Based on our review of the evidence attached to Eggers's petition for post-conviction relief, we conclude that Nemann's advice regarding Eggers's chances at trial was not completely

unwarranted. We further conclude that the trial court did not err in overruling Eggers's post-conviction motion for additional discovery.

**{¶ 41}** Eggers's Seventh Assignment of Error is overruled.

## IV. Conclusion

**{¶ 42}** All of Eggers's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Lisa M. Fannin
Adam Eggers
Hon. Douglas M. Rastatter