[Cite as *State v. Lucien*, 2024-Ohio-1113.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

BRANDON M. LUCIEN,

        Defendant-Appellant.

**CASE NO. 2023-P-0076**

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00875

---

## O P I N I O N

Decided: March 25, 2024
Judgment: Affirmed

---

*Victor V. Vigluicci*, Portage County Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Susan J. Moran*, 1382 West 9th Street, Suite 410, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Brandon M. Lucien, appeals the denial of his Motion for Post-Conviction Relief. For the following reasons, we affirm the judgment of the court below.

{¶2} On November 19, 2020, Lucien was indicted for Aggravated Robbery, Aggravated Burglary, Kidnapping, Aggravated Assault, and Disrupting a Public Service. All charges included firearm specifications.

{¶3} On August 9, 2021, Lucien pled guilty to Burglary and Abduction and was sentenced to an indeterminate sentence of six to nine years for Burglary with a concurrent

sentence of 36 months for Abduction. Lucien's sentence was affirmed on appeal. *State v. Lucien*, 11th Dist. Portage No. 2021-P-0107, 2022-Ohio-2464, ¶ 18.

{¶4} On November 4, 2022, Lucien filed a Motion for Post-Conviction Relief which the trial court denied on March 14, 2023. The court's denial was reversed on account of its failure "to set forth findings of fact and conclusions of law explaining the reason for its decision." *State v. Lucien*, 11th Dist. Portage No. 2023-P-0013, 2023-Ohio-3128, ¶ 10.

{¶5} On September 12, 2023, the trial court again denied Lucien's Motion for Post-Conviction Relief.

{¶6} On September 29, 2023, Lucien filed a Notice of Appeal. On appeal, he raises the following assignments of error:

> [1.] The trial court erred by failing to hold a hearing on the appellant's *Motion for Post-Conviction Relief*.
>
> [2.] The trial court erred by dismissing appellant's Motion based on the merits which alleged actual innocence and that appellant was denied effective assistance of counsel, due process, and the right to a fair trial, as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10, Ohio Constitution.

Lucien's assignments of error will be considered jointly.

{¶7} Lucien's Motion for Post-Conviction Relief sought a new trial on the grounds of "Mr. Lucien's actual innocence and due to the ineffective assistance of trial counsel, Gregory Robey."

{¶8} In an affidavit attached to the Motion, Lucien provided the following information regarding the underlying charges and course of proceedings. The charges stemmed from false allegations made by his fiancée, Lora McDuffie-Selskar. McDuffie-Selskar had a history of making false allegations against Lucien. Documents were

2

attached to the Motion indicating that three cases had been brought against him involving McDuffie-Selskar. The first involved a charge of Burglary which was ultimately dismissed. In the second, he was charged with Burglary and pled to a reduced charge of Criminal Trespass. The third involved a charge of Criminal Damaging which was also dismissed.

{¶9} After being indicted for the underlying charges (Aggravated Robbery, Aggravated Burglary, Kidnapping, Aggravated Assault, and Disrupting a Public Service – all with firearm specifications), Lucien retained the services of Attorney Jason Wells. Wells negotiated a plea agreement whereby Lucien would receive a two-year jail sentence and the possibility of judicial release in six months. Lucien "summarily" rejected the offer "because I was not going to jail for something I did not do."

{¶10} Lucien next retained the services of Attorney Gregory Robey. Robey advised the prosecutor's office of the following exculpatory information: Lucien is 44 years old, gainfully employed, and does not have a felony record; McDuffie-Selskar brought the underlying charges one day after Lucien confronted her about $1,500 of unauthorized credit card charges; there were two alibi witnesses prepared to testify that Lucien was working on a motor vehicle at the time of the alleged crime; McDuffie-Selskar's call to 911 does not mention a gun; McDuffie-Selskar sent Lucien email messages and love letters following his indictment on the current charges; McDuffie-Selskar has threatened Lucien and his current girlfriend; and, following his arrest, McDuffie-Selskar cashed Lucien's stimulus checks. Copies of Robey's letters to the prosecutor's office, as well as copies of a hand-written statement by an alibi witness, messages from McDuffie-Selskar to Lucien, and criminal complaints regarding McDuffie-Selskar's unauthorized use of

3

Lucien's credit card and deposit of his stimulus checks into her own account were also attached to the Motion.

{¶11} According to Lucien, Robey assured him that, if he pled to reduced charges of Burglary and Abduction, he would receive a six-month sentence at a drug rehabilitation facility, followed by two years of probation. It was only because of the "promised sentence" that Lucien agreed to plead. Six affidavits from members of Lucien's family[1] were attached to the Motion which uniformly affirmed that Robey "unequivocally" told them that Lucien would only receive six months in a drug treatment program instead of jail and that this was the "only reason" he entered a plea. An additional five affidavits were attached from persons[2] who were told by members of Lucien's family that, under the terms of the plea agreement, Lucien would only receive drug rehabilitation.

{¶12} Following the entry of his plea, the trial court denied Lucien's referrals for treatment facilities. Lucien inquired of Robey about withdrawing his plea but Robey responded that it was not possible to do so and reassured him that he would receive treatment instead of a jail sentence. Lucien claimed that Robey knew that he was ineligible for treatment but did not disclose this information. Lucien ultimately received an aggregate prison sentence of six to nine years. Robey then advised Lucien that it was possible to attempt to withdraw his plea but recommended against it because it would likely fail. Instead, Robey convinced Lucien to challenge his sentence through a direct appeal.

---

1. These were: Kristen Amy Scanlon (sister), Rodney Rainey (uncle), Judy Rainey (grandmother), Bob Rainey (grandfather), Rhonda Lucien (mother), and Mark Lucien (father).
2. These were: Sarah Morganti (family friend), Kevin Scanlon (brother-in-law), Kristin A. Szemenyei (family friend), Dominic J. Lucien (son), and Charlotte L. Collin (family friend).

4

Case No. 2023-P-0076

{¶13} In denying Lucien's Motion for Post-Conviction Relief, the trial court made the following "findings of fact and conclusions of law":

> Defendant entered a plea of guilty in the [present] case on August 6, 2021 to amended counts of Burglary, F2 and Abduction F3. The Court ordered a PSI, victim impact statement and a NEOCAP assessment. The plea colloquy demonstrates a knowing, intelligent, and voluntary admission to the amended charges, along with a detailed explanation of the potential sentence he could receive. At no time did the attorney for the State or defense counsel indicate a recommendation or agreement to a "treatment program in lieu of jail". Further, the Court would not have accepted such a recommendation as the defendant was not statutorily eligible for a diversion program in this case. It should be noted that "jail" and "prison" are clearly not the same thing and should not be used interchangeably. A "promise" by counsel of a particular outcome, although attested to in the affidavits, is contrary to the transcript of the plea. This Court asked the defendant whether anything had been promised to him other than what was discussed during the plea, and his answer was no. He was advised of the potential prison sentences he could receive, and again, no mention was made of any treatment in lieu of jail.
>
> Defendant further asserts that his trial counsel was ineffective for not pursuing a motion to withdraw his guilty plea prior to sentencing. The defendant received a significant reduction in charges at the plea, including dismissal of firearm specifications which carried mandatory consecutive prison time. There is nothing credible before the Court to find defense counsel was ineffective, even if his advice to defendant was to refrain from filing a motion to withdraw his pleas.
>
> Regarding Defendant's claim of "actual innocence" by way of affidavits supporting an alibi defense, this information was provided to the State through discovery prior to the plea and sentencing. Again, there is nothing credible before the Court to find the counsel was deficient in his representation causing prejudice to the defendant.

{¶14} "A person * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence * * * who has been convicted of a criminal offense * * * and who claims that there was such denial or infringement of the person's rights as to render the judgment

5

void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a)(i). "Before granting a hearing on a petition filed under division (A)(1)(a)(i) * * * of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." R.C. 2953.21(D). "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(F).

{¶15} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. "A petition for post-conviction relief is subject to dismissal without a hearing when the record, including the dialogue conducted between the court and the defendant pursuant to Crim.R. 11, indicates that the petitioner is not entitled to relief and that the petitioner failed to submit evidentiary documents containing sufficient operative facts to demonstrate that the guilty plea was coerced or induced by false promises." *State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983); *State v. Calhoun*, 86 Ohio St.3d 279, 291, 714 N.E.2d 905 (1999).

6

{¶16} Courts of appeal "review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard." *State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, 205 N.E.3d 513, ¶ 38.

{¶17} Lucien maintains that his trial counsel, Robey, was ineffective for the following reasons: he induced Lucien's plea based upon a promise of probation; he was untruthful about Lucien's ability to withdraw his guilty plea before sentencing; and he continued to assure Lucien and his family up until the sentencing hearing that the sentence would be six months of rehabilitation. Appellant's Brief at 16.

{¶18} We conclude that the trial court could, in the exercise of its discretion, deny Lucien's Motion for Post-Conviction Relief. We recognize Lucien's affidavit as well as those of his family members attesting that Robey induced him to enter his plea by the false promise that he would only receive rehabilitation rather than a jail/prison term. Even accepting the truth of these statements (which obviates the need for a hearing), the court was not compelled to grant Lucien relief. *State v. Rafferty*, 12th Dist. Madison No. CA87-08-020, 1987 WL 32761, *2 ("[i]n view of the fact that the court treated everything these affidavits stated as true, there were no factual disputes for it to resolve at a hearing"). "[N]ot all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents." *Calhoun*, 86 Ohio St.3d at 284, 714 N.E.2d 905. "Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." *Id.*

7

{¶19} In the present case, Lucien's claim that he was induced to plead by a false promise must be considered in light of the Criminal Rule 11 plea colloquy conducted in the presence of Lucien's family members as well as the prosecution's witnesses. As noted by the trial court, at no point during the colloquy did either Robey or the prosecutor mention any agreement or guarantee with respect to sentencing. There were passing references to residential treatment, such as the prosecutor stating that he would have no objection "if the court found it appropriate, at the given appropriate time, that he be screened for NEOCAP, assessed for NEOCAP if that was appropriate." The court then explained to Lucien in detail the possible prison sentences that could be imposed: "you have to understand if I chose to today, I could proceed to sentence you to eight to twelve years on the F-2 [Burglary] and up to thirty-six months on the F-3 [Abduction]. Do you understand that?" Lucien replied that he did understand. Lucien further affirmed that nothing had been promised him beyond what had been discussed in court that day and that he had not been forced or threatened to enter his pleas. Finally, the court denied Robey's request that Lucien be granted bond pending sentencing so that he could be released from jail.

{¶20} In light of the plea colloquy where Lucien disavowed any agreements regarding sentencing and acknowledged the possibility of an eight-to-twelve-year prison sentence, the affidavits submitted in support of the Motion fail to contain sufficient operative facts demonstrating that his plea was induced by false promises. In the context of a postconviction petition, the Supreme Court of Ohio has recognized that "[t]he dialogue between court and defendant * * * is substantively meaningful." *Kapper*, 5 Ohio St.3d at 38, 448 N.E.2d 823. In *Kapper*, the court "was satisfied that a record reflecting

8

compliance with Crim.R. 11 has greater probative value" than the allegations raised in the petition. *Id.* Other courts have applied *Kapper* in situations where the allegations raised in the petition, as here, are supported by corroborating affidavits. *State v. Buhrman*, 2d Dist. Greene No. 2003-CA-55, 2004-Ohio-1016, ¶ 28 ("[w]e understand *State v. Kapper* to stand for the proposition that where the affidavit of a petitioner for post-conviction relief is belied by the record, the petitioner's own, self-serving affidavit is not sufficient to require the trial court to hold an evidentiary hearing"); *State v. Bragenzer*, 4th Dist. Pickaway No. 03CA1, 2003-Ohio-5597, ¶ 15 ("when a petitioner[']s affidavit states, contrary to a transcript reflecting compliance with Crim.R. 11, that his guilty plea was not voluntary, the record reflecting compliance with Crim.R. 11 has greater probative value than the affidavit"); *State v. Moore*, 99 Ohio App.3d 748, 755-756, 651 N.E.2d 1319 (1st Dist.1994) ("here, just as in *Kapper*, a record reflecting compliance with Crim.R. 11 has greater probative value than the contradictory affidavits").

{¶21} Contrary to Lucien's position, then, it was not "error for the trial court to rely on what happened on the record [at the plea colloquy] as a means of dismissing what happened off the record [as attested by the affidavits]." Appellant's Brief at 19. Rather, it has often been held that a proper Rule 11 colloquy is sufficient to deny, without hearing, a postconviction petition based on claims of coercion or false promises dehors the record. *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 18 (petition denied without hearing where "[a]ppellant did not indicate at either [the plea or sentencing] hearing that he had been 'promised' or otherwise informed by his counsel that he would only receive a two[-]year prison term on his second-degree felony conviction"); *State v. Glass*, 10th Dist. Franklin No. 04AP-967, 2006-Ohio-229, ¶ 34 ("where an adequate guilty

9

plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel") (citation omitted); *State v. Eggers*, 2d Dist. Clark No. 2012-CA-33, 2013-Ohio-3379, ¶ 17-34 (petition denied without hearing despite six sworn affidavits by friends and family of Eggers attesting to his innocence and counsel's ineffectiveness); *State v. Sheard*, 8th Dist. Cuyahoga No. 52930, 1987 WL 19263, *1-2 ("appellant's contention that his affidavit, along with those of two other persons indicating that he had been coerced, contain 'sufficient operative facts' to substantiate his claim * * * insufficient to rebut a transcript showing the plea was voluntary").

{¶22} This Court has often commented that, "[i]n order to require an evidentiary hearing [in such circumstances], a petitioner needs to submit something such as a letter or affidavit from the court, prosecutors or defense counsel alleging a defect in the plea." *State v. Fry*, 11th Dist. Portage No. 92-P-0049, 1992 WL 366895, *3; *accord State v. Elko*, 8th Dist. Cuyahoga No. 84602, 2005-Ohio-110, ¶ 11, citing *State v. Dudley*, 11th Dist. Trumbull No. 99-T-0166, 2000 WL 1876778, *3; *compare State v. Johnson*, 8th Dist. Cuyahoga No. 54104, 1988 WL 36554, *1 (the trial court erred in denying the petition without hearing where, in addition to "corroborating affidavits from ten other persons who reportedly heard defendant's counsel give him that assurance [of a particular sentence]," the defendant submitted "a letter from his counsel in response to an inquiry from the state public defender, which impliedly acknowledges that his counsel gave such assurances").

{¶23} In several cases, the courts have also looked beyond the plea colloquy at conduct which is consistent with a knowing, intelligent, and voluntary plea. In *Calhoun*,

10

86 Ohio St.3d 279, 714 N.E.2d 905, the court rejected a claim that defense counsel failed to file a motion to withdraw his guilty plea where the defendant "did not attempt to file a *pro se* motion," "did not seek a public defender," "did not attempt to retain new counsel," and "did not even mention his desire to withdraw his plea at sentencing." *Id.* at 291. In *State v. Lewis*, 3d Dist. Logan No. 8-19-08, 2019-Ohio-3031, the court noted that, during the presentence investigation interview, the petitioner "indicated that she understood her sentence as communicated by the trial court at her change of plea hearing." *Id.* at ¶ 28; *also State v. Pugh*, 7th Dist. Belmont No. 23 BE 0001, 2023-Ohio-4736, ¶ 27 ("[i]f Appellant believed that his counsel made promises that induced him to enter his plea, he had a duty to bring this to the attention of the trial judge prior to entering his plea"). Likewise in the present case, Lucien's conduct is inconsistent with the claims of his Petition. We acknowledge Lucien's position that, following the plea colloquy, Robey allegedly continued to assure him that he would only receive treatment in addition to falsely telling him that it was not possible to withdraw his plea. However, following the sentencing hearing, the falsity of these claims became patent: Lucien received a lengthy prison sentence instead of treatment and Robey offered to file a change of plea motion. It is difficult to understand how Robey could have offered to file a change of plea motion if the basis of that motion was that Robey had induced the plea by a false promise of treatment. And it is difficult to understand why Lucien would retain Robey to file the direct appeal after Robey falsely misrepresented the sentence Lucien would receive and the ability to withdraw his plea.

{¶24} Lucien argues that the conduct of the plea hearing is consistent with his expectation that he would be sentenced to a residential treatment program such as

11

NEOCAP. At the plea hearing, Robey asked that Lucien be assessed for NEOCAP and the State did not object. The trial court agreed to "have him assessed for NEOCAP while the PSI is being conducted just to get a better idea of whether or not he would be eligible at some point anyway." According to Lucien, these discussions regarding NEOCAP "would have been consistent with Mr. Robey's assurance to him and his family that Mr. Robey had worked out a deal with the State, and that Mr. Lucien would avoid prison if he entered the plea deal." Appellant's Brief at 24. We disagree that the court's willingness to have Lucien assessed for NEOCAP to determine whether he would be eligible "at some point" is consistent with an agreement that Lucien would receive treatment instead of prison in exchange for his plea. The absence of any mention of an agreement to this effect and the court's admonition of the prison sentences that could be imposed are wholly inconsistent with Lucien's position. On the other hand, the fact that Lucien was referred to NEOCAP for assessment would be consistent with an expectation that residential treatment was at least an option in lieu of prison. We find the argument equivocal, neither compelling a hearing on the Motion nor preventing the court from granting a hearing if, in the exercise of its discretion, it deemed it appropriate to do so. In this, deference to the trial court judge is appropriate inasmuch as the judge who considered Lucien's Motion was the same judge who presided at the plea and sentencing hearings. *Compare Calhoun* at 286 ("[t]he judge who reviewed defendant's postconviction relief petition was the same judge who presided at the change of plea hearing and the sentencing hearing" and, so, "was familiar with the underlying proceedings and was in the best position to observe the defendant and his attorney and therefore assess the credibility of the affidavits").

Case No. 2023-P-0076

{¶25} With respect to the claims of actual innocence, Lucien argues that the trial court failed to appreciate that the bargain obtained by Robey did not constitute a significant reduction in charges given the lack of evidence corroborating the victim's account of events and the potential alibi witnesses. The record fails to demonstrate operative facts on this issue. As noted by the trial court, Robey produced to the State the exculpatory evidence prior to his plea and sentencing. There is no evidence as to how Robey might have been deficient in failing to secure a better agreement, particularly in light of the fact that Lucien's prior attorney had secured better terms which Lucien rejected. According to Lucien's own affidavit, he rejected the State's first offer "because [he] was not going to jail for something [he] did not do." It is not ineffectiveness on Robey's part if the State refused to offer better terms than those already rejected by Lucien. Moreover, if Lucien absolutely refused to go to jail for something he claimed he did not do, Robey's ability to negotiate for terms was effectively compromised.

{¶26} Finally, with respect to Robey's failure to pursue a motion to withdraw the guilty plea prior to sentencing, Lucien argues the trial court "failed to appreciate the sum and substance of Mr. Lucien's argument that he did not enter his plea knowingly, voluntarily, and intelligently, and that he should have been advised that the proper remedy would have been to withdraw the plea before the sentencing, especially when counsel learned that NEOCAP was not an option." Appellant's Brief at 27. As discussed above, even assuming the substance of the affidavits were true, Lucien's plea would not be rendered invalid in light of the plea colloquy and his subsequent conduct. In essence, any misrepresentations by Robey as to what sentence Lucien would receive or could expect to receive pertain to what Lucien subjectively believed he would receive. They

13

are objectively incompatible with the agreement entered into at the plea hearing. It is well-established that a "court will not permit a defendant to withdraw his guilty plea merely because he receives a harsher penalty than he subjectively expected." (Citation omitted.) *State v. Pena*, 11th Dist. Trumbull No. 2022-T-0103, 2023-Ohio-2354, ¶ 25.

{¶27} Lucien's assignments of error are without merit.

{¶28} For the foregoing reasons, the denial of Lucien's Motion for Post-Conviction Relief is affirmed. Costs to be taxed against the appellant.


MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.